IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARIA A. RICO,**

      **Plaintiff,**

vs.                                                                                Civ. No. 00-1300 MV/RLP

**LARRY G. MASSANARI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.     Plaintiff, Maria A. Rico, filed applications for Disability Insurance Benefits (DIB)[2] and Supplemental Security Income Benefits (SSI) on March 2, 1995, alleging disability as of April 15, 1994, due to low back pain, leg numbness and major depression.[3] (Tr.94, 98, 44, 150). Her applications were denied at the first and second levels of administrative review, and by an Administrative Law Judge following a hearing. (Tr. 14-33). Plaintiff appealed the ALJ's decision to the Appeals Council which declined review on July 19, 2000. (Tr. 5-6.) The matter before this Court is Plaintiff's Motion to Reverse or Remand the decision of the Commissioner denying benefits. For the reasons stated below, I recommend that Plaintiff's Motion be granted in part, and that this matter

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] Plaintiff filed previous applications for DIB and SSI which were denied on March 14, 1994. (Tr. 83-90). She did not appeal the denial of these applications. The ALJ determined that the finding of non-disability was **res judicata** through that date. Plaintiff does not appeal that finding.

[3] Plaintiff does not raise any issue on appeal with regard to the correctness of the ALJ's evaluation of her mental condition.

be remanded to the Commissioner for additional proceedings.

**I.      Issues on Appeal**

2.      Plaintiff raises three issues in this appeal: Whether the ALJ's analysis of Plaintiff's obesity was improper and incomplete; whether specific findings made by the ALJ were untrue and contrary to undisputed evidence, and whether the ALJ failed to properly evaluate the testimony of the vocational expert.

**II.     Standard of Review**

3.      This Court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, I cannot weigh the evidence or substitute my discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

4.      The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant at steps one through four; the Commissioner bears the burden of proof at step five. **Id.**

**III.    Analysis**

### A. The ALJ Correctly Determined That Plaintiff's Obesity Did Not Satisfy the Criteria for a Listed Impairment.

5.     At the time of Plaintiff's administrative hearing, and when the ALJ issued his decision, December 24, 1997, obesity was a listed impairment considered at step three of the sequential evaluation process. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §9.09 (1998). Disability under §9.09 could be established through evidence of specified heights and weights, combined with additional medical findings.[4]  **Harris v. Apfel**, 152 F. Supp. 1261, 1266 (D. Kan. 2001) ( In order to prevail at step three of the sequential analysis, a claimant must provide medical evidence that supports a finding that she meets a listed impairment.). Obesity was deleted from the Listing of Impairments as of October 25, 1999. See **Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria**, 64 Fed.Reg. 46122, 46124 (1999). The Social Security Administration issued **Social Security Ruling, S.S.R. 00-3p,** effective May 15, 2000, addressing the evaluation of obesity. Under the revised criteria, obesity is still considered as a medically determinable impairment which adjudicators are to consider at each step of the sequential evaluation process. Specific height and weight measurement, however, do not apply to the new critera. *Id.*  Appeals Council declined to review this matter on July 19, 2000, without addressing the revision in the regulations or **S.S.R. 00-3p**. (Tr. 5-6).

6.     Correct legal standards require that the standards contained in Listing §9.09 be applied to this case. **Harris v. Apfel**, 152 F.Supp. 2d 1261, 1266, citing as persuasive **Nash v. Apfel**, 215 F.3d 1337, 2000 WL 710491 (10th Cir.2000)( unpublished decision). Accordingly, I evaluate Plaintiff's claim under Listing § 9.09 as it existed at the time of the administrative hearing.

---

[4]Only §9.09(A) is relevant to Plaintiff's claim.

7. Plaintiff has been overweight at all times under review, April 15, 1994, through December 24, 1997. Medical chart entries during that time indicate the following.

| Date | Height | Weight | Examiner | Tr. |
|---|---|---|---|---|
| 5/9/94 | | 257 | St. Francis Clinic | 178 |
| **5/15/95** | **62 inches** | **240** | **Dr. Erickson[5]** | 237 |
| 6/19/95 | | 258½ | St. Francis Clinic | 245 |
| 7/12/95 | | 259 | St. Francis Clinic | 243 |
| 3/11/96 | | 250 | Dr. Frechen | 284 |
| 6/4/96 | | 265 | St. Francis Clinic | 329 |
| 11/7/97 | | 256 | St. Francis Clinic | 327 |
| **11/25/97** | **66 inches** | **260** | **St. Francis Clinic** | 326 |
| 12/5/97 | | 262 | St. Francis Clinic | 326 |

(Tr. 41, 50). The ALJ adopted the findings of Dr. Erickson[6] (Tr. 21), and found that Plaintiff's obesity, although severe, did not solely or in combination with her severe impairment of spondylolisthesis, meet or equal a listed impairment. (Finding No. 3, Tr. 27).

8. Utilizing Dr. Erickson's findings as to Plaintiff's height, the evidence is overwhelming that Plaintiff met the first prong for establishing disability under Listing §9.09. Table II to Listing §9.09 (Obesity) requires Plaintiff to prove a specified height and weight, as well as additional elements, to qualify as disabled pursuant to the listing. The ALJ cannot ignore medical records of weight gain. Indeed, in order to reject the weight findings recorded by Plaintiff's treating physicians, the ALJ would have had to discuss that evidence, which he did not. **Clifton v. Chater**, 79 F.3d 1007, 1010

---

[5]Dr. Erickson is a psychiatrist who conducted two examinations of Plaintiff on behalf of the Disability Determination Unit. The first evaluation was performed on February 7, 1994, in connection with a prior application for benefits. At that time Dr. Erickson recorded a height of 62 inches and a weight of 230 lbs. (Tr. 175).

[6]At her administrative hearing, Plaintiff testified that she was 64 inches tall and weighed approximately 245 pounds. Correct legal standards do not allow the ALJ to rely Plaintiff's testimony in determining her height and weight. *Ingram v. Chater,* 107 F.3d, 598, 601 (8th Cir. 1997); *see Harris v. Apfel*, 152 F.Supp. 2d at 1266 (Plaintiff's testimony as to height and weight are insufficient for purposes of establishing obesity under §9.09(A)).

(10th Cir. 1996). By finding that Plaintiff was 62 inches tall, as recorded on two occasions by Dr. Erickson, the ALJ had to conclude that she met the weight requirement of Listing §9.09 (A) for the requisite durational period.[7]

9.      To fulfill the second prong of Listing §9.09(A), a claimant must present medical evidence of a "(h)istory of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine." The medical record establishes a history of pain and limitation of motion in the lumbosacral spine. (Regarding pain, see, e.g., pre onset: Tr. 174, 255, 179-182, 175; post onset: Tr. 232, 229, 228, 223, 221, 237-238, 243, 266, 329. Regarding limitation of motion, see Tr. 239-240). X-ray and MRI studies established that Plaintiff has Grade I spondylolisthesis and associated bilateral spondylolysis[8] of her last lumbar and first sacral vertebrae (Tr. 260, 254, 174) slight spur formation at L4-5 (Tr. 254), and early degeneration of the intervertebral disc in the lower lumbar spine. (Tr. 174). The studies do not, however, indicate any radiography finding of arthritis.

> For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. §20 CFR 416.926(a) (1989).

**Sullivan v. Zebley**, 493 U.S. 521, 531 (1990).

10.     The medical evidence presented does not support a finding of disability based on Listing §9.01(A).

---

[7]Table II provides that listing level obesity for an female 62 inches tall is 242.

[8]Spondylolisthesis is the forward displacement of one vertebra over another. *Dorland's Illustrated Medical Dictionary* (28th Ed. 1994) at 1563. Spondylolysis is the dissolution of a vertebra. Id

### B. Substantial Evidence Does Not Support Specific Findings Made by the ALJ.

11. Plaintiff challenges various findings made by the ALJ support of his decision as been untrue, contrary to undisputed evidence, improper and unsupported by substantial evidence. I agree.

    1. "Regarding the use of assistive devices, Claimant does not use a cane to walk about. She ambulates normally." (Tr. 24).

12. The ALJ found that Plaintiff walked normally. (Tr. 24). Plaintiff testified that she "sometimes" used a cane to get around. (Tr. 46). In May of 1992 she was noted to have an ataxic (uncoordinated) gait, and was unable to heel/two walk. (Tr. 182). Her medical care provider recommended that she walk for exercise in July 1992. (Tr. 181). She demonstrated a broad based gait in February 1994. (Tr. 175). Walking was again recommended in late 1994. (Tr. 223). A social security interviewer noted her difficulty walking in March 1995. (Tr. 157). The inability to heel/toe walk was still present in May 1995, and she was noted to be extremely unsteady. (Tr. 237). The ALJ's finding that Plaintiff walked normally was not supported by substantial evidence. In and of itself, this error by the ALJ would not mandate reversal, however, because the ALJ also found that Plaintiff's was limited to sedentary work.

    2. "Claimant . . . communicates clearly." (Tr. 19).

13. In assessing Plaintiff's "social functioning," the ALJ found that she was able to communicate clearly. Plaintiff suffers from documented, though undiagnosed, speech and/or communication problems, at least in terms of spoken English:

    a. "The patient has an apparent speech problem and was very difficult to understand at times." (Dr. Erickson, February 7, 1994, Tr. 175).

    b. "(She has) limited English capability and a speech impediment." (Charlotte O'Bannon, LMSW, Carlsbad Mental Health Association ("CMHA" herein),

6

August 11, 1994, Tr. 235).

    c.    "I couldn't understand her so am unclear about her difficulty in speech. I don't know what that is from - from birth, a handicap, minimal English (true) or both." Id., August 24, 1994, Tr. 234).

    d.    "English understanding still questionable . . ." Id., September 26, 1994, Tr. 229).

    e.    "Still very hard to make her understand and vice versa." Id., November 28, 1994, Tr. 224).

    f.    "Client's chances at employment are slim due to her speech impediment." Id., January 19, 1995, Tr. 221).

    g.    "Her difficulty with English and a physical handicap make her very difficult to understand." Id., February 20, 1995, Tr. 214).

    h.    "She speaks broken English, but has slurred speech." Kris Martinez, Social Security interviewer/examiner, March 30, 1995, Tr. 157).

    i.    "Speech impediment really hinders her capacity to be employable again." Charlotte O'Bannon, LMSW, C.M.H.A., July 13, 1995 (Tr. 249).

    j.    "It is possible that she is mildly retarded but most likely it is the speech impediment and language problem." Id., August 23, 1995, Tr. 267).

    k.    "Speech impairment interferes with commun. of ideas." Eve Flanigan, B.S., LPC, C.M.H.A., September. 13, 1995, Tr. 266).

14.    The evidence is overwhelming that Plaintiff has a speech impairment which impedes her ability to communicate. The ALJ either ignored or misconstrued this evidence. A speech impairment is a non-exertional impairment. **Social Security Ruling, S.S.R. 83-10.** Application of correct legal principles require that Plaintiff's speech impairment be considered at step five of the sequential evaluation process.

    3.    "There are no neurological dysfunctions or deteriorations." (Tr. 24).

15.    In assessing Plaintiff's complaints of pain, the ALJ found that she had no neurological

dysfunction or deterioration. (Tr. 24). Evidence of an as yet undiagnosed neurological abnormality is frequently noted in the medical charting:

> a. "Objective . . . Pt moves with almost spastic movements. Neuro exam: (Cranial nerves) 2-12 wnl except decreased sens. L side of face, can't heel/toe walk. Gait - ataxic. F-N okay though fine motor skills decreased. . . Assessment/Plan . . . Hyperreflexia/spastic movements - bilat. . . . R/o neurological disease . . . May need referral to UNMH neurology service." Presbyterian Medical Service (St. Francis Clinic), May 18, 1992). (Tr. 182).

> b. "Patient continues to have the spastic movement noted by other doctors previously." Presbyterian Medical Service (St. Francis Clinic), September 28, 1992). (Tr. 180).

> c. "She appeared to have very spastic type motions, almost like Parkinsonian at times. . . The patient with the strange motion or spasms she appeared to have, I feel might merit further evaluation of a neurologist for possible Parkinson's or other neurological history." Dr. Erickson, March 1, 1994. (Tr. 175-175A).

> d. "(Ear, nose and throat) remarkable only for nervous twitch that involves smacking of the lips and head motion. Presbyterian Medical Service (St. Francis Clinic), May 9, 1994). (Tr. 178).

> e. "The patient .. . moves frequently while taking the history with almost Parkinsonian type movements of her head and arms and hands. . . She may also have some type of neurological condition or neuropsychiatric condition adding to her problem. It might be of benefit to obtain psychiatric or neurological evaluation." Dr. Erickson, May 15, 1995. (Tr. 237-238).

> f. "Spastic movements arms and legs. . . spasticity (?etiol). Presbyterian Medical Service (St. Francis Clinic), November 7, 1997). (Tr. 328).

16. Treating health care providers noted Plaintiff's spasticity. The ALJ "adopted" the findings of Dr. Erickson's May 15, 1995, evaluation. (Tr. 21). Dr. Erickson was sufficiently impressed by Plaintiff's odd movements that he suggested a neurologic examination.

An ALJ has "broad latitude" in determining whether to order a consultative examination. **Diaz v. Secretary of Health & Human Servs.**, 898 F.2d 774, 778 (10th Cir.1990). The ALJ should

order one if the claimant has shown "a reasonable possibility that a severe impairment exists" and the examination would be "necessary or helpful to resolve the issue of impairment." **Hawkins v. Chater**, 113 F.3d 1162, 1167 (10th Cir.1997). I find that Plaintiff has shown a "reasonable possibility" that a severe neurologic impairment exists, and that an neurological exam would be helpful in resolving the issue of impairment.

### C. The Testimony of the Vocational Expert Was Inconsistent, and Based On an Incomplete Hypothetical Question.

17. The ALJ determined that the Plaintiff could not return to her past relevant work (Tr. 25. He posed the following hypothetical question to a vocational expert:

> Q: (A)ssume hypothetically and (sic) individual with the age, educational background, and experience of the claimant. If we were to further presume that that individual is limited to a maximum lift to 10 pounds. The individual needs to have the opportunity to alternate occasionally between sit and stand. No frequent bending, lifting, walking. No kneeling, crawling, stopping, or climbing. . . (would there be other work in the economy that an individual such as I described, might be able to perform?
>
> A: Your Honor, you indicated alternating standing and sitting. Am I to assume that in the hypothetical the person could sit up to six hours of an eight hour day?
>
> Q: Well, it would depend. I would assume about half of the time the individual would be sitting, about half the time standing.
>
> A: Okay. Yes. That work would be as a cashier II. Those of the sedentary nature. . . DOT number 211462010. These would be cashiers that work in parking lots, and change booths, and things of that nature where there is an opportunity to stand or sit at will. Approximately 50,000 in the region and 500,000 nationally.

(Tr. 72-73).

The Vocational Expert then rejected another job, that of ticket seller, because although in his experience that job would accommodate a sit/stand option, it was classified as "light" by the DOT, and therefore beyond Plaintiff's lifting capability. (Tr. 73-74).

9

18. Cashier II, as defined in the Dictionary of Occupational Titles, is also classified as "light." (Tr. 315). No explanation was elicited as to why the "light" job of cashier II was within Plaintiff's exertional capacity, while the "light" job of ticket seller was not. The testimony of the vocational expert is inconsistent, and therefor is not substantial evidence of Plaintiff's ability to perform the job of cashier II.

19. In addition, the hypothetical posed to the vocational expert is incomplete, in that it does not take into account Plaintiff's non-exertional impairment of a speech impairment.

## V. Recommendation

20. For these reasons, I recommend that Plaintiff's Motion to Reverse or Remand be granted in part, and that this matter be remanded for additional proceedings to include a neurological examination and the posing of hypothetical questions to a vocational expert which include all of Plaintiff's exertional and non-exertional impairments.

_____
**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**